UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CAROL L.[1], | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )    CIVIL NO. 1:21cv210 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

     This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

     The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.    The claimant last met the insured status requirements of the Social Security Act

2

   on December 31, 2017.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 10, 2013 through her date last insured of December 31, 2017 (20 CFR 404.1571 *et seq*.).

3.  The claimant has had medically determinable impairments of: sinus infections, degenerative disc disease, gastroesophageal reflux disease, hearing loss, coronary artery disease, peripheral vascular disease, hypertension, hyperlipidemia, obesity, and arthritis (20 CFR 404.1521 *et seq*.).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq*.).

5.  Alternatively, if the claimant had a severe impairment prior to the date last insured, it would have been, at most, degenerative disc disease (20 CFR 404.1520(c)).

6.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

7.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

8.  Through the date last insured, the claimant was capable of performing past relevant work as a nursery school attendant and order clerk. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

9.  The claimant was not under a disability, as defined in the Social Security Act, for twelve consecutive months in duration, at any time from January 10, 2013, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(f)).

(Tr. 17-24).

  Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits,

leading to the present appeal.

Plaintiff filed her opening brief on December 29, 2021.  On February 8, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on February 28, 2022**.** Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled.  *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987).  The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order:  (1)  Is the claimant presently unemployed?  (2)  Is the claimant's impairment "severe"?  (3)  Does the impairment meet or exceed one of a list of specific impairments?  (4)  Is the claimant unable to perform his or her former occupation?  (5)  Is the claimant unable to perform any other work within the economy?  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).   In the present case, Step 4 was the determinative inquiry.

In support of remand, Plaintiff first argues that the ALJ erred in the weight he gave to Dr. Shugart's opinion. In December 2011, well before the alleged disability onset date of January 10, 2013, Plaintiff presented to Dr. Shugart of Fort Wayne Orthopedics, due to left side back and leg pain. The record shows that Dr. Shugart performed a lumbar decompression and discectomy on

4

Plaintiff on December 16, 2011. (Tr. 254, 831). In a series of post-op visits, Dr. Shugart restricted Plaintiff to light duty work. (Tr. 248-254). The latest "Restriction Worksheet" in the record was dated April 3, 2012, and restricts Plaintiff to no lifting over 5 pounds and no pushing or pulling over 5 pounds. (Tr. 248). This "Restriction Worksheet" also states "Restrictions effective until next office visit." However, there is no record of further office visits in the record.

In discussing this evidence, the ALJ held:

The undersigned finds the opinions of the claimant's physical therapist[2] unpersuasive. This provider limits the claimant to lifting no more than five pounds until the next appointment in January, February, and April of 2012 (Exhibit 2F). First, these are temporary restrictions rather than assessments of her functional capacity over time. Second, these restrictions were given prior to the alleged onset of disability, and therefore do not relate to the period under adjudication in this decision. Third, no supporting rationale for these limitations is stated and establishing such as existing twelve consecutive months in duration during the period in question (See, e.g., Exhibit 2F/3). Last, a capacity to lift no more than five pounds is not consistent with the record as a whole, including her normal strength (Exhibit 30F/16). Therefore, these opinions are not persuasive.

(Tr. 21).

Plaintiff argues that since she never returned to Dr. Shugart, the restrictions he imposed on her remained in effect permanently, thereby undercutting the ALJ's determination that the restrictions do not relate to the pertinent period. Plaintiff's argument is totally lacking in any logic. Clearly, the restrictions were meant to be temporary, as they were only effective until the next office visit, which Dr. Shugart likely assumed would be the next month, or May of 2012, as Plaintiff had been having post-op visits roughly every month since her surgery. (*See* Tr. 254- January 10, 2012 visit; Tr. 252- February 21, 2012 visit; Tr. 250 - March 20, 2012 visit; Tr. 249 -

---

[2] The ALJ mis-spoke here. Exhibit 2F contains the records from Dr. Shugart's office, not from the physical therapist.

April 3, 2012 visit[3]). Thus, there is no error in the ALJ's conclusion that the restrictions Dr. Shugart imposed were temporary, and that they were given prior to the alleged onset of disability and thus not relevant.

The ALJ also noted that there was no supporting rationale for the limitations Dr. Shugart imposed. Plaintiff takes issue with this point and claims that an MRI performed on March 21, 2012 showed disc desiccation at the L4-L5 disc. (Tr. 255). The MRI report, in the "Discussion" section, states: "MRI of the lumbar spine was obtained with contrast. Vertebrae height and alignment normal. Desiccation L4-L5 disc. Signal marrow unremarkable." Later, in the "Impression" section, the report states: "Post op L4-L5 on the left with the scar tissue present." (Tr. 255). Although Plaintiff cites to a medical blog in support of her argument that this MRI report supports Dr. Shugart's restrictions to light duty work, the record is void of any evidence that Plaintiff's disc desiccation, which happens naturally with age, caused her any problems or supported the need for work restrictions.

Plaintiff also points to physical therapy discharge notes from April 2, 2012 which note that Dr. Shugart diagnosed Plaintiff with displacement of lumbar disc, s/p discectomy, muscle weakness/lumbar radiculopathy and difficulty walking/groin pain. (Tr. 1179). This physical therapy note also states that Plaintiff's last physical therapy appointment was on February 1, 2012, and "unable to assess pt as she stopped attending PT". (Tr. 1179). Again, this evidence does not support the restrictions that Dr. Shugart prescribed for Plaintiff, as the mere diagnosis of

---

[3] The notes of this visit are dated March 20, 2012 at the top but, at the bottom of the note it indicates that the notes were dictated on April 3, 2012, transcribed on April 4, 2012, and electronically signed by Dr. Shugart on April 5, 2012. Thus, the note was clearly related to Plaintiff's April 3, 2012 visit.

an impairment is insufficient evidence of disability. In fact, the physical therapy note arguably supports the ALJ's conclusion that the restrictions are unsupported by medical evidence, as Plaintiff apparently improved enough to quit therapy.

The ALJ also noted that other evidence in the record showed that Plaintiff had normal strength, which was inconsistent with a restriction to lift no more than five pounds. That is, records from Cameron Hospital related to a November 29, 2012 emergency room visit for chest discomfort, indicated: "Moves all extremities well. Joints normal. Strength and tone is adequate." Plaintiff, in reply, asserts that having normal strength is not inconsistent with lifting restrictions, because the restrictions were due to her fragile back and not due to lack of strength. However, the Cameron Hospital records do not indicate that Plaintiff was fragile in any way.

This Court finds that the ALJ's determination that Dr. Shugart's office notes and restrictions are neither supported by or consistent with the evidence to not be in error. The ALJ complied with 20 CFR 404.1520c which required him to explain how he considered the factors of supportability and consistency. Nothing more is required. Thus, there is no basis for remand on this issue.

Next, Plaintiff argues that the ALJ erred in the RFC assessment. Plaintiff challenges the ALJ's assessment of her back and knee impairments, fibromyalgia, and heart disease. Plaintiff argues that the ALJ did not adequately evaluate these impairments and did not accommodate them in the RFC. Plaintiff also asserts that the ALJ failed to consider evidence that post-dates her date last insured, which she contends is required by *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984).

With respect to her back impairment, the ALJ held:

7

> In terms of the claimant's alleged degenerative disc disease, the record does reflect that the claimant had a lumbar discectomy in 2011, before the alleged onset of disability (Exhibit 2F/4). However, her treatment notes reflected significant improvement from this procedure (Exhibit 2F/7). Subsequent imaging has shown degenerative changes of the lumbar spine (Exhibit 15F/42). However, the record reflects no significant treatment for back pain from 2013 to 2016. Additionally, while the claimant had complained of back pain in 2016, the imaging showing degeneration was not performed until October 2018, ten months after the date last insured, and even then, such was mild (Exhibit 15F/42, 18F/24). Accordingly, this evidence tends to show that this impairment did not cause more than minimal limitations during the period under consideration.

(Tr. 19).

The ALJ correctly noted that Plaintiff improved after her 2011 lumbar discectomy. (Tr. 25), Dr. Shugart stated that "Last time I saw her, she was 75% better. This last Saturday remembers going shopping and symptoms are worse now in her leg."). In any event, the lumbar discectomy was performed before the alleged onset of disability. The ALJ also correctly noted that Plaintiff received no significant treatment for back pain from 2013 to 2016, the relevant period. Plaintiff directs the Court to Dr. Shugart's notes placing Plaintiff on restrictions, but these restrictions, discussed above, were in 2011 and 2012, and not the 2013 to 2016 time period to which the ALJ referred. Plaintiff also points to her March 2012 MRI which showed desiccation of the L4-5 disc but, again, this MRI was not taken during the relevant time period.

Plaintiff also contests the ALJ's determination that Plaintiff's October 16, 2018 MRI showed only mild degeneration. The MRI report states that with respect to L3-L4 there was mild degenerative disc disease, and with respect to L4-L5 there was degenerative disc disease. (Tr. 661). Also at L5-S1 there was degenerative disc disease. (Tr. 662). Thus the ALJ correctly (although not completely) summarized the MRI report, and correctly noted that the MRI was not performed during the relevant time period. In any event, the ALJ held, in the alternative, that

8

Plaintiff's degenerative disc disease was a severe impairment.

Plaintiff also points out that at an August 29, 2018 visit to her orthopedic doctor, she was noted to be using a walker, and was advised to continue using the walker. (Tr. 531). However, this visit was a post-op visit following Plaintiff's August 22, 2018 left knee arthroscopy surgery. She was using a walker due to her knee surgery and not due to any back impairment. Later post-op visits show that she discontinued the use of the walker after a few weeks and had a steady gait. (Tr. 492, 495, 504, 510, 516, 523).

Plaintiff cites to Tr. 691-92 which relates to a visit to Ortho NorthEast on October 9, 2018. X-rays taken at this visit "show severe disc space collapse at L4-5 and moderate to severe disc space collapse at L5-S1". Plaintiff was advised to perform home exercises and to lose weight. An MRI was recommended, after which surgical options would be discussed. In a November 26, 2018 appointment at Ortho NorthEast, Plaintiff was in "obvious discomfort" and "ambulating with a limp". (Tr. 716). However, this was a "Pre-operative History and Physical". (Tr. 713). Plaintiff had back surgery on November 27, 2018. (Tr. 704-712). Post-op visits show that Plaintiff had no swelling or tenderness, hardware was in good position, and she was doing well post-operatively. (Tr. 726-27) At other visits, Plaintiff reported sciatica pain (Tr. 729), and ambulated with a limp (which may have been related to her knee). (Tr. 737). However, Plaintiff had full strength and physical therapy was ordered. (Tr. 730, 737). In any event, all of these back-related orthopedic visits occurred in late 2018 and early 2019, well past Plaintiff's date last insured of December 31, 2017.

Moreover, as noted above, Plaintiff did not receive treatment for her back from 2013-2016, leading to the conclusion that even though her back impairment worsened in 2018, there is

no medical evidence of severe impairment before her date last insured. Plaintiff contends, in her reply, that her back problem in 2018 were extreme and "that it is unlikely that they just appeared in 2018 and would have certainly related back to the relevant period." However, there is no evidence supporting this contention and the Court rejects Plaintiff's invitation to play doctor. Also, Plaintiff's reliance on *Halvorsen* is misplaced. Although *Halvorsen* held that "[t]here can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period" (743 F.3d at 1225), that does not mean that an ALJ must discuss every piece of evidence that post-dates a claimant's date last insured in every case. Such a ruling would defeat the regulations' purpose of having a date last insured. In *Halvorsen*, the post-dated evidence included a medical opinion that the plaintiff's condition (epilepsy) had remained essentially unchanged from 1954 to 1980. In the present case, there is no evidence that Plaintiff's condition remained unchanged over the years. Rather, Plaintiff improved after surgeries and then her symptoms worsened in later years, which is not uncommon with back problems due to the aging process. Thus, the Court finds no error in the ALJ's discussion of Plaintiff's back impairment.

Next, Plaintiff argues that the ALJ improperly evaluated her knee impairment. The ALJ held that:

> The claimant alleged knee pain and the record includes imaging showing marked joint narrowing, this imaging was from July 2018. However, it was noted that her knee pain had only been present for a month (Exhibit 13F/84). Therefore, this impairment was not present until after the date last insured.

(Tr. 19).

Although Plaintiff's date last insured was December 31, 2017, Plaintiff refers to her

history of knee pain and surgery, which occurred in mid to late 2018. In fact, medical records expressly state that in July 2018, Plaintiff's knee pain had been present for a month. (Tr. 565). Plaintiff also notes that at the hearing she testified that her knee was bothering her in 2017, and that walking would cause pain. (Tr. 63).  However, there is no medical evidence in the record supporting this testimony and, as the Commissioner points out, the ALJ reasonably credited the medical records over Plaintiff's testimony which was given on August 4, 2020, long after the events in question. Plaintiff refers to a visit to Ortho NorthEast on May 10, 2019, where she stated that she had "pain, swelling and reduced ROM in the right and left knee with popping and stiffness which has been present for 2 years". (Tr. 733).  However, there are no medial treatment records for her knee from before December 2017 to support Plaintiff's complaints of pain, and even at this visit Plaintiff rated her pain as a 3 on a scale of 1 to 10.  Plaintiff reported she was able to get out of bed by herself, rise from a chair by herself, and did not need an electric cart at the grocery store. (Tr. 733). Plaintiff also claims that an orthopedic office visit on June 11, 2018 supports her contention that her knee pain was present in 2017.  However at this visit she stated that she "recently noticed that she twisted her knee and the pain will not go away." (Tr. 559). Plaintiff was diagnosed with osteoarthritis and directed to treat conservatively with rest, ice, and elevation as needed. (Tr. 662).  It was also noted that an MRI was not warranted.  (Tr. 663). Thus, for all the above reasons, the Court finds no error in the ALJ's evaluation of Plaintiff's knee pain.

Next, Plaintiff argues that the ALJ failed to adequately analyze her fibromyalgia.   The ALJ stated:

> The undersigned finds the claimant's fibromyalgia and hypothyroidism not medically determinable. Additionally, while the claimant alleged hypothyroidism, her records actually reflect normal thyroid functioning (Exhibit 14F/5).

> Additionally, her thyroid examinations have been normal (Exhibit 9F/22, 21F/29). Last, to establish fibromyalgia as a medically determinable impairment, SSR 12-2p requires an acceptable medical source to conduct a review of the patient's medical history or conduct a physical exam. A diagnosis by itself is insufficient. This medical document review or physical exam must yield very specific findings enumerated by SSR 12-2p to show the existence of fibromyalgia, but the record does not contain such findings. As a result, the undersigned cannot find fibromyalgia to be a medically determinable impairment. Yet, even if so, the medical treatment records do not document such resulted in significant limitations of function for twelve months in duration as of the date last insured.

(Tr. 20).

Plaintiff notes that she was diagnosed with fibromyalgia in August of 2016 (Tr. 704), and that on November 2, 2018, Dr. Ko found multiple tender points for myalgia. (Tr. 637). Plaintiff contends that the 2018 exam supports the 2016 diagnosis. However, there is a more than two-year gap between the diagnosis and Dr. Ko's exam. Plaintiff has not pointed to any intervening medical evidence that would show that she had any of the specific findings required by SSR 12-2p, nor has she presented evidence that her fibromyalgia resulted in significant limitations of function for the duration of twelve months. In fact, Dr. Ko noted that Plaintiff has had improvement in her fibromyalgia pain. (Tr. 638). Additionally, as the Commissioner argues, Plaintiff has not even alleged any limitations resulting from her fibromyalgia prior to her date last insured. Thus, there is no error in the ALJ's evaluation of Plaintiff's fibromyalgia.

Next, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's heart impairment. The ALJ stated:

> As for her coronary artery disease, the claimant did report chest pain for an hour in 2012 (Exhibit 4F). However, the record does not reflect ongoing complaints of cardiac symptoms until 2016. The claimant did have an abnormal stress test in late 2016 and had a Mynx closure device implanted (Exhibit 12F/51, 59). However, imaging showed only a ten percent right coronary artery plaque (Exhibit 12F/52). Additionally, she had a well-preserved ejection fraction of 60% (Exhibit 12F/52).

12

> Her cardiologist recommended only risk factor modification, therapeutic lifestyle, and cardiac surveillance afterwards (Exhibit 12F/52). Moreover, overall, the record does not document twelve consecutive months of significant chest pain, palpitations, angina and shortness of breath for the period in question. Disease was limited and not occlusive. Since her subsequent records tend to reflect denials of cardiac symptoms, this impairment does not appear to have persisted for twelve consecutive months in duration imposing significant limitations of function for the same period (Exhibit 20F/62).
>
> The undersigned acknowledges that the claimant's representative argued that the claimant would be limited to sedentary work based on a treatment note describing the claimant's symptoms as Canadian class III angina, the undersigned notes that this description does not indicate that these symptoms persisted for 12 months Additionally, while she has hypertension, the record does not reflect persistent limiting symptoms associated with this diagnosis. Further, the undersigned notes that the record often reflects normal blood pressure levels (See e.g., Exhibit 9F/6, 10F/9, 13F/46, 14F/19).

(Tr. 19-20).

Plaintiff notes that in September 2016 she reported left sided chest pain (Tr. 574), and that in October 2016 she was diagnosed with coronary artery disease, angina, shortness of breath and abnormal EKG. (Tr. 471). In November of 2016 Plaintiff had a left heart catherization, selective coronary angiography and LV angio, right SFA angio, and Mynx closure device. (Tr. 926). Plaintiff further notes that she went to the emergency room in November of 2012 with chest pain and shortness of breath. (Tr. 1162, 1176). Plaintiff infers that this evidence shows that her coronary artery disease symptoms persisted for 12 months in the relevant period. Plaintiff points out that cardiology reports from 2018 and 2020 discuss the symptoms she experiences from coronary artery disease. (Tr. 425, 987).

As set forth above, the ALJ discussed the evidence relevant to the time period at issue, noting that Plaintiff had chest pains in 2012, and procedures performed in 2016. However, as the ALJ found, there is no evidence that Plaintiff had persistent heart disease symptoms for a twelve

13

month period.  In fact, Plaintiff's cardiologist recommended only risk factor modification, therapeutic lifestyle, and cardiac surveillance after her heart procedures. (Tr. 470). Thus, substantial evidence supports the ALJ's conclusion that, prior to Plaintiff's date last insured, she had limited treatment for her heart disease.  While the record may reflect that Plaintiff suffered a worsening of her condition after her date last insured, that does not undermine the ALJ's decision which was focused on the relevant time period. Although Plaintiff's briefing is reminiscent of the dogged determination of a Ukranian patriot, unlike the stalwart Ukrainians, Plaintiff cannot prevail today.

For all the above reasons, the Court finds no error in the ALJ's assessment of Plaintiff's impairments and thus there is no basis for remand.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: March 2, 2022.

        s/ William C.  Lee
        William C. Lee, Judge
        United States District Court